UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SCOTTIE MONROE TAYLOR                                    CIVIL ACTION

VERSUS                                                  NUMBER: 15-3418

CAROLYN W. COLVIN, ACTING                               SECTION: "H"(5)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION

## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based upon disability.  (Rec. docs. 12, 13).

Scottie Monroe Taylor, Plaintiff herein, filed the subject applications for Social Security benefits on February 2, 2012, with a protective filing date of October 1, 2011, alleging disability as of December 17, 2011.  (Tr. pp. 192-198, 199-204, 272).  In a "Disability Report-Adult" form that appears in the administrative record below, the conditions limiting Plaintiff's ability to work were identified as seizures, diverticulitis, a heart condition, and depression.  (Tr. pp. 275-282).[1/]  Plaintiff's applications for Social Security benefits were

---

[1/] Completed on the same date as this form was a "Disability Report-Field Office" form, which reflects that Plaintiff had filed previous applications for Social Security benefits that were denied at the initial level of the Commissioner's administrative review process on October 19, 2010 and were not appealed further.  (Tr. pp. 272-273).  The administrative record also contains an earlier "Disability Report-Field Office" form dated August 6, 2010 alleging disability as of October 25, 2009, which references an even earlier set of applications for Social Security benefits that were administratively denied on December 16, 2005 and were not appealed further.  (Tr. pp. 228-229).  It thus appears that the benefits applications at issue in this proceeding are at least the third set of such applications that Plaintiff has filed.

denied at the initial level of the Commissioner's administrative review process on May 4, 2012. (Tr. pp. 88-91, 92-95). Pursuant to Plaintiff's request, a hearing *de novo* before an Administrative Law Judge ("ALJ") ultimately went forward on January 2, 2014, at which Plaintiff appeared and testified after voluntarily waiving his right to representation. (Tr. pp. 97, 98-100, 28-42, 179). On March 24, 2014, the ALJ issued a written decision in which he concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 6-27). The Appeals Council ("AC") subsequently denied Plaintiff's request for review of the ALJ's decision on June 9, 2015, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 1-4). It is from that unfavorable decision that the Plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, Plaintiff frames the issues for judicial review as follows:

> A. The ALJ erred in failing to find Mr. Taylor's anxiety, major depression disorder and seizures are severe impairments (along with his degenerative joint disease of the knees, gastrointestinal disorders and status-post remote Myocardial infarction), although they interfere with Mr. Taylor's ability to work.
>
> B. The ALJ erred in failing to consider Mr. Taylor's mental impairments in assessing residual functional capacity and failing to take vocational testimony in light of Mr. Taylor's mental impairments.

(Rec. doc. 12-1, pp. 3-4).

Relevant to the resolution of the issues framed by the Plaintiff are the following findings that were made by the ALJ:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since December 17, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: Degenerative Joint Disease of the knees, gastrointestinal disorders, and status-post remote Myocardial infarction (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), including the full range of sedentary work.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 26, 1974 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 17, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. pp. 14, 16, 20, 21).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision and (2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420 (1970). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues *de novo*, nor may it substitute its judgment for that of the Commissioner. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act. *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or

4

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. *Harrell*, 862 F.2d at 475. In making this determination, the Commissioner uses the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. An individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors;

4. If an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made;

5. If an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). If the claimant carries that burden and successfully demonstrates that he is unable to perform the work that he has done in the past, the burden of proof shifts to the Commissioner at the fifth step to show that the claimant can perform other work in light of his age, education, work experience, and physical and mental limitations. *Kramer v. Sullivan*,

885 F.2d 206, 208 (5th Cir. 1989).  In determining whether there is other work available that the claimant can perform, the Commissioner may rely exclusively on the Medical-Vocational Guidelines of the Regulations (the "Grids") when the claimant suffers only from exertional impairments or when his non-exertional impairments do not significantly affect his residual functional capacity.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga*, 810 F.2d at 1304.  Once the Commissioner demonstrates that the individual can perform other work, the burden then shifts back to the claimant to rebut that finding.  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fraga*, 810 F.2d at 1302.

As noted earlier, Plaintiff challenges the Commissioner's decision to deny him Social Security benefits on two grounds.  While those two grounds were enumerated separately, the argument that follows is wholly homogenized and is not specific as to each of the challenges.  (Rec. doc. 12-1, pp. 3-6).  Be that as it may, Plaintiff first argues that the ALJ erred in failing to find that his anxiety, "major depression disorder," and seizures were severe impairments.[2/]  A "severe impairment" is defined as any impairment or combination thereof that significantly limits one's physical or mental ability to do basic work activities.  20 C.F.R. §§404.1520(c), 416.920(c); *Shipley v. Sec. of Health and Human Services*, 812 F.2d 934, 935 (5th Cir. 1987).  In *Stone v. Heckler*, 752 F.2d 1099, 1102-04 (5th Cir. 1985), the Fifth Circuit disapproved of the summary dismissal of Social Security benefits applications at the second step of the §§404.1520/416.920 sequential evaluation such that any claim that is based upon an impairment which is more than a "slight abnormality" will proceed through step two of the five-step analysis.  *Anthony*, 954 F.2d at 293-94; *Stone*, 752 F.2d at 1102-04.  In his

---

[2/] While depression and seizures were identified as disabling conditions in Plaintiff's applications for Social Security benefits and related paperwork, anxiety was not.  This omission tends to undermine that alleged basis of disability.  *Pierre v. Sullivan*, 884 F.2d 789, 802 (5th Cir. 1989).

written decision of March 24, 2014, the ALJ properly recited the foregoing severity standard complete with a citation to *Stone*, *supra*.  (Tr. p. 14).

Plaintiff argues that the ALJ's determination that his mental impairment was not severe "… is not supported by substantial evidence because, first, the ALJ did not consider whether the combined effects of all impairments, mental and physical, would be of sufficient severity."  (Rec. doc. 12-1, p. 4).  A fair reading of the ALJ's decision does not bear this out as he clearly recognized that "[a] medically determinable impairment or combination of impairments …" can be severe (tr. p. 14)(emphasis added), following which he methodically discussed the evidence pertaining to all of Plaintiff's impairments, including his seizure disorder and depression, providing detailed reasons why he found those conditions to be non-severe.  (Tr. pp. 14-16).  Citing an undated "Function Report" form that appears in the record below (tr. pp. 248-254), Plaintiff next argues that although he indicated in the form that he could perform certain activities independently, he required periodic rest breaks, experienced knee pain when squatting and walking, could lift only a "few pounds," and could not handle stress "very well."  (Rec. doc. 12-1, p. 4).  As for the capabilities and limitations that Plaintiff self-reported on the Function Report, the Court simply notes that a claimant's subjective complaints must be supported by the objective evidence of record, *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994), and a claimant's statements, standing alone, are insufficient to establish even the existence of an impairment.  20 C.F.R. §§404.1528(a), 416.928(a).

Turning to his seizure disorder, Plaintiff points to a form that he and his ex-wife completed on March 5, 2012 in which they reported that Plaintiff experienced seizure activity approximately once or twice per month.  (Tr. pp. 303-304).  The medical records that

were admitted in the administrative record reveal that Plaintiff presented to the Ochsner Medical Center – North Shore ("OMC-NS") on December 10, 2011 after experiencing a syncopal episode at work, reporting four previous episodes in the preceding three years. Plaintiff was admitted to the hospital and underwent a battery of tests, including an EEG and a CT scan of the brain, which all were normal.  Plaintiff was discharged home in stable condition on December 12, 2011 with a diagnosis of syncope of suspected cardiac etiology with a prior history of myocardial infarction and cardiac scarring several years earlier.  (Tr. pp. 386-413).

Pursuant to a referral, Plaintiff was subsequently seen at the Bogalusa Medical Center ("BMC") Outpatient Clinic on January 11, 2012 for a history of myocardial infarction in 2005 and a history of seizures, the last one reportedly occurring on December 17, 2011.  The myocardial infarction was reportedly precipitated by cocaine use and the syncopal spells were characterized as "clear cut seizures by description."  Plaintiff was to be referred to a neurologist for further evaluation and was counseled against driving.  (Tr. pp. 420-421).  A bilateral carotid and vertebral arterial study was performed on February 15, 2012 which produced normal results.  (Tr. p. 495).  A CT scan of the head was conducted on February 29, 2012 that was also normal.  (Tr. p. 492).  Plaintiff was seen again at BMC for follow-up care on July 12, 2012 and was attended to by a physician that he was seeing for the first time. Plaintiff related a history of seizures since 2009 at a reported frequency of two to three per week, the last one occurring one week earlier, for which he was taking no medication at the time.  He was prescribed Dilantin and Paxil, was to return to the clinic in seven to 10 days, and was referred for an EEG and cardiology and neurology evaluations.  (Tr. pp. 713-714). Plaintiff was next seen at BMC on September 26, 2012 and no further seizures were noted

after he had started on medication.  (Tr. pp. 712-713).  Plaintiff returned to BMC on February 18, 2013 and reported having missed appointments for the recommended EEG and neurological and cardiological evaluations.  Plaintiff confirmed that he had not had any further seizures since starting on Dilantin following his clinic visit of July 12, 2012.  Plaintiff's seizure disorder was declared to be stable with medication and the recommended testing included that to monitor the level of Dilantin in his bloodstream.  (Tr. pp. 209-210).  A condition that can reasonably be remedied or controlled by medication is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987).

When he was next seen at BMC on March 26, 2013, Plaintiff continued to be seizure-free since before his clinic visit of July 12, 2012.  Medication refills were authorized.  (Tr. pp. 707-708).  No seizures were reported at Plaintiff's next visit to BMC on April 17, 2013.  (Tr. pp. 705-706).  Plaintiff returned to BMC on May 2, 2013 but left before being seen by a doctor. (Tr. pp. 703-704).  At a subsequent visit to BMC on June 26, 2013, Plaintiff complained of occasional breathing difficulties and was strongly encouraged to quit smoking in light of his family history of cancer.  (Tr. pp. 701-702).  On November 25, 2013, Plaintiff presented to BMC with a cough and congestion and on-and-off knee pain for years.  The impression was an upper respiratory infection and degenerative joint disease in both knees.  Medications were prescribed and testing was scheduled, including an MRI.  (Tr. pp. 699-701).

The hearing before the ALJ went forward on January 2, 2014 and the ALJ issued his unfavorable decision on March 24, 2014.  (Tr. pp. 28-42, 6-27).  Subsequent to and in connection with his request for review of the ALJ's decision, Plaintiff submitted additional medical evidence to the AC, including records of a follow-up visit to the BMC Outpatient Clinic on February 7, 2014.  Principal complaints at the time included bilateral knee pain, the

ineffectiveness of Prozac, and head congestion.  It was noted that Plaintiff had reportedly experienced a seizure two weeks earlier, the first documented incident since before July 12, 2012, a period of some 18 months.  Listed by the examining physician as the fourth clinical impression, behind bilateral knee pain, degenerative joint disease, and nicotine abuse, was "seizure disorder," for which the dosage of Plaintiff's Dilantin was increased to three times per day, he was referred to the Neurology Clinic for further evaluation, and was to return in three months.  (Tr. pp. 731-732).  Plaintiff was also referred to physical therapy but after attending only two treatment sessions, he cancelled his next scheduled appointment and did not call or return for further care.  (Tr. pp. 729-730).

Thus, as far as the objective medical evidence is concerned, Plaintiff was first seen for a syncopal spell of suspected cardiac etiology in December of 2011 and was later prescribed anti-seizure medication on July 12, 2012, following which he suffered no additional seizures all the way through the date of the administrative hearing.  As noted earlier, a condition that can reasonably be controlled by medication is not disabling.  *Lovelace*, 813 F.2d at 59.  In light of the body of the evidence that was before him, the ALJ did not err in finding that Plaintiff's seizure disorder was not a severe impairment.

Plaintiff also takes issue with the ALJ's finding that his anxiety/depression was not a severe impairment.  (Rec. doc. 12-1, p. 5).  Citing a psychological consultative evaluation report from Dr. M. Hunter Hansen dated April 14, 2012, Plaintiff argues that he suffers from symptoms that "... include worrying, thinking about past problems, wanting to cry, and insomnia" and that "[h]is physicians indicate [that] his anxiety and depression have impaired his functioning in work and relationships."  (*Id.*).  While the Court is unable to characterize the consultative evaluator as one of Plaintiff's own treating physicians, a review of the second

page of Dr. Hansen's report reveals that he did document the symptoms that Plaintiff identifies. (Tr. p. 487). However, Dr. Hansen went on to note that Plaintiff's "... mental health symptoms have not significantly impacted [his] work functioning," "... have not impacted his activities of daily living," and that his "[s]ocial functioning is not significantly impaired." (*Id.*). What was described by Plaintiff was "... episodes of a[n] episodic nature with no decompensation of functioning." (*Id.*). Indeed, a typical day for Plaintiff involved "trying to find odd jobs, clean[ing] [the] house, and clean[ing] [the] yard ..." Plaintiff had no history of psychiatric hospitalizations, suicidal attempts, or suicidal ideations. (*Id.*). Dr. Hansen found that Plaintiff presented with only episodic symptoms of a depressive disorder and that he did not meet the full criteria for a major depressive episode. (Tr. p. 488). Although it was felt that Plaintiff was minimally impaired in his ability to maintain attention sufficient to perform simple repetitive tasks for two hour blocks of time, he had no limitations in the ability to understand, remember, or carry out simple and detailed instructions; to sustain effort and persist at a normal pace over the course of a routine 40-hour workweek; to relate to others, including supervisors and co-workers; and to tolerate the stress/pressure associated with day-to-day work activity and demands. (Tr. p. 488). After evaluating Dr. Hansen's findings and the other record evidence pertaining to Plaintiff's depression under the four broad functional areas known as the "paragraph B" criteria of the Regulations, 20 C.F.R., Pt. 404, Subpt. P, App. 1, §12.00(C), the ALJ properly found that Plaintiff's depression was not severe under 20 C.F.R. §§404.1520a(d)(1) and 416.920a(d)(1). (Tr. p. 15).

Citing "Ex. 15 at p. 27," Plaintiff next argues that he has also experienced panic attacks in addition to his mental symptoms, "that he reported feeling nervous all the time and not being able to stand large crowds, and that he could no longer take Prozac after February of

2014 as it increased his anger." (Rec. doc. 12-1, p. 5). Of the medical evidence admitted in the proceedings below, the only piece of it that was identified with the number "15" was exhibit 15F, the twenty-seventh page of which contains the results of an MRI that was performed on December 9, 2013. (Tr. p. 720). As a party moving for summary judgment, Rule 56(c)(1)(A) requires him to cite those specific portions of the record that support his position. Plaintiff also alleges that "... the ALJ failed to resolve ... inconsistencies in the evidence" and instead "... relied on the opinion of the ME, Drs. Eisenhauer and Wood, who did not examine or treat Mr. Taylor, but based his conclusion that she met the requirements for medium work on an incomplete record, the ALJ had a duty to develop." (Rec. doc. 12-1, pp. 5-6). Plaintiff does not describe with any degree of specificity the inconsistencies in the evidence to which she refers. Doctors Eisenhauer and Wood were state agency medical consultants, not testifying medical experts ("ME") as defined by 20 C.F.R. §§404.1527(e)(2)(ii) and 416.927(e)(2)(ii) and as used in *Myers v. Apfel*, 238 F.3d 617, 618 (5th Cir. 2001), but whose opinions the ALJ nevertheless duly considered under §§404.1527(e)(1) and 416.927(e)(1). (Tr. p. 20). And contrary to Plaintiff's present assertion, the ALJ did not conclude that he was capable of medium-level work, only light and sedentary-level work. (Tr. p. 16).

In short, after considering the entirety of the record that was before him, including Plaintiff's testimony at the hearing, his subjective complaints and the objective evidence that must support them, the ALJ concluded that Plaintiff's depression and seizure disorders were not severe impairments and that he retained the capacity to perform light work in spite of his degenerative joint disease of the knees, gastrointestinal disorders, and status-post remote myocardial infarction. Based primarily upon Dr. Hansen's benign findings and the

fact that Plaintiff's seizure disorder was quickly brought under control with medication within approximately eight months of its objective onset, those conditions were found to be non-severe within the meaning of the Social Security Regulations. Dr. Hansen's largely unremarkable findings also provided a valid basis for the ALJ to rely upon the Grids rather than the testimony of a vocational expert in adjudicating Plaintiff's applications because his depression did not significantly affect his residual capacity. *Selders*, 914 F.2d at 618; *Fraga*, 810 F.2d at 1304. To the extent that the ALJ may have erred in that regard, inasmuch as Plaintiff's applications for Social Security benefits proceeded past step two of the §§404.1520/416.920 sequential analysis and were not summarily denied at that step based on the fact that he did not suffer from a severe impairment, Plaintiff's first argument provides no basis for disturbing the Commissioner's decision. *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Wagner v. Astrue*, No. 08-CV-0519, 2010 WL 546739 at *7 (E.D. La. Feb. 12, 2010).

A fair reading of the ALJ's decision also reveals that he discounted Plaintiff's allegations of work-preclusive limitations because his credibility was suspect. (Tr. p. 19). *See, e.g.*, *Diaz v. Sec. of Health and Human Serv.*, 898 F.2d 774, 777-78 (10th Cir. 1990). Among other things, the ALJ accurately noted that Plaintiff collected unemployment benefits during part of the time period that he claimed to be disabled. (Tr. pp. 19, 218-219, 226-227). While not dispositive, applications for unemployment benefits and for disability benefits are inherently inconsistent and incompatible as there is no reasonable explanation for how a person seeking Social Security benefits under the guise of being unable to work can simultaneously seek unemployment benefits claiming that he is ready and able to work. *Redwine v. Astrue*, No. 12-CV-2296, 2013 WL 3070850 at *13 (E.D. La. June 17, 2013); *Jones*

13

*v. Astrue*, No. 11-CV-2288, 2013 WL 1136854 at *16 (E.D. La. Feb. 25, 2013), *adopted*, 2013 WL 1130438 (E. D. La. Mar. 18, 2013)(citing *Jones v. Chater*, 68 F.3d 467 (5ᵗʰ Cir. 1995)(table)).  At the time of the ALJ's decision, Plaintiff was 39 years of age (a "younger person" within the meaning of 20 C.F.R. §§404.1563(c) and 416.963(c)); had a high school education within the meaning of 20 C.F.R. §§404.1564(b)(4) and 416.964(b)(4); and had the residual functional capacity for light work.  20 C.F.R. §§404.1567(b) and 416.967(b).  Rules 202.20 to 202.22 of 20 C.F.R. Subpart P, App. 2, Table No. 2, thus directed a finding of "not disabled."

### **RECOMMENDATION**

For the foregoing reasons, it is recommended that Plaintiff's motion for summary judgment be denied, that Defendant's motion for summary judgment be granted, and that Plaintiff's suit be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United States Auto. Assoc.*, 79 F.3d 1415 (5ᵗʰ Cir. 1996)(en banc). [3/]

New Orleans, Louisiana, this 26th day of _____ July _____, 2016.

---

[3/] *Douglass* referenced the previously-applicable 10-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to 14 days.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE